UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KYLE DANIEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:18-cv-181-SPM |
| | ) |
| | ) |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, the Commissioner of Social Security, denying the application of Plaintiff Kyle Daniel ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

### I.     PROCEDURAL BACKGROUND

On August 9, 2007, Plaintiff applied for DIB, and that application was denied on October 12, 2007, and Plaintiff did not appeal. On August 27, 2008, Plaintiff again filed for DIB, and that

---

[1]     On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

1

claim too was denied, and Plaintiff again failed to appeal that decision. On April 6, 2015, Plaintiff again applied for DIB, alleging that he had been unable to work since March 1, 2006. (Tr. 140). His application was initially denied. (Tr. 77). On June 2, 2015, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 88). On September 14, 2017, the ALJ issued an unfavorable decision. (Tr. 11-21). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, which was denied on June 19, 2018. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for

him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is

not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff last met the insured status requirements of the Act on June 30, 2009, and that he did not engage in substantial gainful activity during the period from his alleged onset date of March 1, 2006, through his date last insured of June 30, 2009. (Tr. 13). The ALJ found that Plaintiff had the severe impairments of degenerative disc disease, psoriasis/eczema/seborrheic dermatitis, history of fibular fracture, and posttraumatic stress disorder, but that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 13-15). The ALJ found that through the date last insured,

> [Plaintiff] had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. He could stand/walk for a total of six hours in an eight-hour workday and sit for a total of six hours each in an eight-hour workday. The claimant could not push and pull leg controls. He could occasionally operate foot pedals. He could occasionally balance, kneel, crouch, crawl, and stoop. He could occasionally climb ramps and stairs. He could not climb ladders, ropes, and scaffolds. He could perform simple, routine tasks that involve working primarily with things rather than other people. He could have no direct interactions

4

> with the general public. He had to work in a non-public work setting. He could have only superficial interactions with co-workers and supervisors, defined as no mediation, arbitration, negotiation, confrontation of others or supervision of others. His work environment had to be indoors. This reflects an ability to perform a range of light work as defined in 20 C.F.R §§ 404.1567(b).

(Tr. 15).

The ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work.[2] (Tr. 20). However, relying on the testimony of a vocational expert, the ALJ found that through the date last insured, there were other jobs existing in significant numbers in the national economy that Plaintiff could have performed, such as laundry worker (*Dictionary of Occupational Titles* ("*DOT*") No. 302.685-010), machine tender (*DOT* No. 754.685-014), and assembler of small products (*DOT* No. 706.684-022). (Tr. 20-21). The ALJ concluded that Plaintiff was not under a disability, as defined in the Act, at any time from March 1, 2006, the alleged onset date, through June 30, 2009, the date last insured.

## IV.   DISCUSSION

Plaintiff challenges the ALJ's decision, asserting that the RFC determination is deficient because it is not supported by "some" medical evidence. Plaintiff argues that the RFC is further flawed because the ALJ did not properly evaluate his subjective reports of symptoms in accordance with SSR 16-3p. Plaintiff further argues that the ALJ erred by not including in his RFC a limitation to one-to-two-step tasks, as indicated by a state agency reviewing psychologist, and that therefore, the testimony of the vocational expert could not constitute substantial evidence, as the ALJ's hypothetical questions posed to her did not include such a limitation. The Commissioner argues that the RFC is supported by substantial evidence, and that the ALJ did not improperly rely on the testimony of the vocational expert, as the ALJ was not required to include such a limitation in his

---

[2]   Plaintiff's past relevant work included bussing and serving tables in a kitchen, deckhand on a barge, factory worker, stacker at a kitty litter factory, and truck driver. (Tr. 160).

5

hypotheticals, and that, in any event, the vocational expert testified that including such a limitation would not have changed her testimony.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Medical Evidence in the Record Supports the RFC

"When assessing a claimant's RFC, the ALJ must consider all relevant evidence in the record." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). However, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by 'some medical evidence' of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642,

646 (8th Cir. 2017) (*quoting Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)); *see also Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) ("A claimant's RFC is a medical question, and some medical evidence must support the RFC determination."). Therefore, while the claimant "bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment," *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013), "[a]n ALJ is required to obtain additional medical evidence if the existing medical evidence is not a sufficient basis for a decision." *Nader v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). *Accord Haley v. Massanari*, 258 F.3d 742, 749–50 (8th Cir. 2001) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.").

Plaintiff argues that the ALJ's decision was not supported by substantial evidence, because his RFC assessment was not supported by "some" medical evidence. The Court disagrees. Based on a careful review of the record,[3] the Court finds that the ALJ's RFC assessment was supported by substantial evidence, including medical evidence, addressing Plaintiff's ability to function in the workplace, and the ALJ was under no obligation to further develop the record.

First, the record contains the opinion of a consultative neurological examiner, Annemarie R. Guidos, M.D. ("Dr. Guidos"), dated October 29, 2008. (Tr. 261-65). Dr. Guidos noted that

---

[3] The medical record in this case is voluminous. However, upon review, the vast majority of the record appears to concern medical treatments, diagnoses, and related events that fall outside the relevant time period in this case, which is between March 1, 2006 (the alleged date of onset), and June 30, 2009 (the date last insured). If a claimant is not insured for Title II purposes, then a court may only consider an applicant's medical condition as of his date last insured, and Plaintiff has the burden of proving he was disabled prior to that date. *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (citing *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997)). It appears from the record, and Plaintiff's briefing, that Plaintiff's condition has deteriorated to some extent during the approximately ten years since his date last insured; however, evidence of Plaintiff's current condition is not relevant to the question of whether he was disabled during the window of time between his alleged onset date and the date last insured, and the Court will consider only the records relating to the relevant time period.

Plaintiff was alert, properly oriented, had normal attention span and concentration, appropriate insight, judgment, mood, and affect, and denied any acute problems or physical weakness. (Tr. 262). Upon examination, she found that Plaintiff exhibited 5/5 muscle strength in all major muscle groups, normal muscle bulk and tone, normal gait/station, normal range of motion, negative straight leg raise tests, and that his spine showed no tenderness to palpation. *Id*. She also found that while there was some evidence of psoriasis on his ankles, it was "in a very contained isolated area." (Tr. 263). She opined that Plaintiff could stand for two hours at a time, and would then require a ten-minute break, that he had no limitations related to sitting, hearing speaking or travelling, and no limitations on walking aside from a need to rest every two hours, and that he could lift and carry 40 pounds. *Id*. The ALJ stated that he accepted the limitations in the opinion, but, based on Plaintiff's testimony, would limit Plaintiff to a range of light work, which would customarily allow for breaks every two hours. (Tr. 19).

The record also contains the opinion of a state agency psychological consultant, also from October 2008, which indicated that Plaintiff had no more than moderate limitations in his ability to perform work-related activities such as concentrating and interacting. (Tr. 245-47). The consultative examiner opined that Plaintiff was capable of "simple, routine tasks or 1-2 step tasks away from the general public." (Tr. 247). The ALJ stated that he accepted those limitations, and assigned the opinion some weight. The Court finds that the ALJ did not err in considering these opinions in determining that Plaintiff was able to perform work. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (ALJ may properly choose to credit the medical opinions "none of which indicated that [Plaintiff] had serious functional restrictions."); *see also Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007)

Second, the ALJ's RFC assessment is supported by numerous medical records regarding Plaintiff's allegedly disabling physical conditions, pain management, and conservative course of treatment, which collectively provide additional detail about his ability to perform work related activities, and which fail to provide strong support for Plaintiff's allegations of disabling symptoms and limitations. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing disability); *Black v. Apfel*, 143 F.3d 383, 386-87 (8th Cir. 1998) (a conservative course of treatment is inconsistent with complaints of debilitating pain).

For example, the record shows that, during the relevant period, at a medical examination in October 2008, Plaintiff had full strength in all major muscle groups, normal muscle bulk and tone, normal sensation, normal range of motion for his back, no focal tenderness to palpation to his back, and no muscle spasms. (Tr. 262). At that same visit, the examiner noted some psoriasis on his ankles and left arm, but only in "an isolated area" of "just a few inches." *Id*. At another visit on November 19, 2008, Plaintiff went to the Veterans Affairs hospital to seek a refill of the ibuprofen he took to control his pain. (Tr. 288-90). At that visit, he indicated that his pain was at a level of zero, and he denied any depression or other psychiatric issues. (Tr. 288, 290). Upon examination, the doctor noted that Plaintiff had no new rash or non-healing lesions, no musculoskeletal aches or pain, no focal tenderness of the back, but with some tenderness at L5-S1, and that he appeared alert and pleasant. (Tr. 288). The doctor advised Plaintiff to exercise by walking one-to-two miles daily, and asked him to return to the clinic in six months for follow up. (Tr. 290). At a doctor's visit on May 12, 2009, shortly before his date last insured, Plaintiff sought treatment for a rash on his scalp and ankles. (Tr. 283, 1350). At that visit, Plaintiff again rated his pain level as zero, and reported that his ankle rash varied in intensity. (Tr. 283, 1350-52). As the

9

ALJ noted, the record during the relevant period showed no imaging or other diagnostic testing associated with his back, leg, or skin conditions; that Plaintiff had required no back or orthopedic surgeries; no inpatient psychiatric treatment, or indeed, even any routine psychological counseling; and that a great deal of his dermatological treatment was for removal of moles and warts rather than lesions related to eczema or psoriasis. (Tr. 17-18). The ALJ properly relied on these consistently mild findings in crafting Plaintiff's RFC. *See Goff*, 421 F.3d at 792 (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing disability).

The Eighth Circuit has held that mild or unremarkable objective medical findings and other evidence may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing Plaintiff's ability to function in the workplace. *See, e.g.*, *Stringer v. Berryhill*, 700 F. App'x 566, 567-68 (8th Cir. 2017) (affirming a finding that the claimant was not disabled; noting, "While there were no medical opinions, it appears the medical evidence would have supported even a less restrictive RFC"); *see also Thornhill v. Colvin,* No. 4:12–CV–1150 (CEJ), 2013 WL 3835830, at *12 (E.D. Mo. July 24, 2013) (holding that medical records supporting the ALJ's statement that "physical examinations have been essentially unremarkable and reveal normal independent gait with no evidence of spine or joint abnormality or range of motion limitation or muscle tenderness" constituted medical evidence in support of a finding that the claimant could perform medium work).

In this case, the record contains both medical opinions that support the RFC, and treatment records indicating largely mild, moderate, or otherwise unremarkable objective findings during the relevant period. *See Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (ALJ was reasonable in considering Plaintiff's conservative course of treatment when finding claimant not disabled).

Given all the above, the Court finds that the ALJ's RFC assessment was supported by medical evidence, and it will not disturb that decision.

## C. ALJ Properly Considered Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ did not properly consider Plaintiff's subjective complaints. More specifically, Plaintiff argues that the ALJ should not have held against him the fact that he applied for disability benefits over nine years after his alleged onset date. The ALJ stated that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 17). The ALJ went on to note that Plaintiff filed his application on April 6, 2015, alleging disability beginning on March 1, 2006. *Id*. The ALJ found that this detracted from the persuasiveness of the allegation of disability, as the delay "fails to make an impression that he sensed any urgency regarding the type of symptoms he alleged." *Id*.

"Credibility determinations are the province of the ALJ." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016). This court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility." *Id*. Here, as further discussed below, good reasons and substantial evidence support the ALJ's determination that Plaintiff's claimed limitations were not entirely consistent with the evidence of record. "This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the Commissioner must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the

individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).[4] An ALJ "may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Travis*, 477 F.3d at 1042; *see also Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) ("An ALJ has a statutory duty to assess the credibility of the claimant, and thus, an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances.") (internal quotes omitted). The delay between Plaintiff's alleged onset date and the date of this application is evidence in the record, and constitutes one of the "other circumstances" that the ALJ may properly consider when evaluating Plaintiff's subjective complaints. *Id*. A delay of this length would seem to speak to the perceived urgency of Plaintiff's symptoms, militating against a finding that they were as disabling as alleged. The ALJ has a duty to consider the entire record, and he did not err by considering this fact.

In any event, the length of time between Plaintiff's date of onset and date of application is but one of many items cited by the ALJ in support of his conclusion that Plaintiff's symptoms were not entirely consistent with the evidence of record. For example, the ALJ noted that the mostly mild objective medical findings and conservative course of treatment were inconsistent with Plaintiff's subjective reports. (Tr. 17-18). The Court has reviewed the medical evidence at length, *supra*, and will not revisit its discussion of those findings here, except to note that the relatively mild findings and conservative course of treatment noted by the ALJ supports the ALJ's conclusions regarding consistency. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015)

---

[4] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017). This clarifies that "subjective symptom evaluation is not an examination of an individual's character." Id. at *2. The factors to be considered remain the same under the new ruling. *See id*. at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529; 416.929.

(holding that a pattern of limited and conservative treatment is a proper factor for an ALJ to consider in weighing subjective reports). *See also Goff*, 421 F.3d at 792 (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor when weighing subjective reports); *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (allegations of disability that are inconsistent with the objective medical evidence weighs against the credibility of the claimant's allegations).

Additionally, the ALJ noted that the medications Plaintiff was taking during the relevant period, which included Aspirin, Ibuprofen, Atenolol, Loratidine, Sertraline, and Trazodone, were "common medications and not commonly considered to be strong," and that Plaintiff did not regularly take narcotic pain medications. (Tr. 19, 286-87). The ALJ noted that this was "not indicative of the claimant's allegations about his symptoms," and did not support a finding of complete disability. (Tr. 19). The medications taken, including their strength, dose, and effectiveness, are among the factors ALJ's are required to consider when evaluating a claimant's subjective complaints, and the ALJ properly did so in this case. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009); *Depover v. Barnhart*, 349 F.3d 563, 566 (8th Cir. 2003).

The ALJ also considered, among other things, Plaintiff's work history, noting that Plaintiff had lost several jobs for reasons unrelated to his impairments. (Tr. 16). For example, Plaintiff lost a job as a deck hand because he had "a falling out" with the captain. (Tr. 16, 32). He also lost a job as a table saw cutter and forklift driver because the business closed. *Id*. Loss of employment for reasons other than a claimant's alleged impairments is an appropriate factor for the ALJ to consider when evaluating his subjective complaints. *See Milam*, 794 F.3d at 985.

In light of the foregoing considerations and the record as a whole in this case, the undersigned finds that substantial evidence supports the ALJ's conclusions regarding the consistency of Plaintiff's subjective complaints.

### D. Simple Routine Tasks vs. Jobs Limited to One-to-Two-Step Tasks

The ALJ, in making his RFC finding, considered the medical opinion of state agency reviewing psychologist, Dr. Holly Weems ("Dr. Weems") and assigned it some weight. (Tr. 19, 249). Dr. Weems found that Plaintiff had no more than moderate limitations in his ability to perform work-related activities such as concentrating and interacting. (Tr. 245-47). She opined that Plaintiff was capable of "simple, routine tasks or 1-2 step tasks away from the general public." (Tr. 247). The ALJ stated that he accepted those limitations, and assigned the opinion some weight. The ALJ included in Plaintiff's RFC a limitation to "simple, routine tasks that involve working primarily with things rather than other people." (Tr. 15). Plaintiff argues that the ALJ erred by not also including in the RFC a limitation to one-to-two-step tasks. Plaintiff makes the related argument that, as a result of this alleged error, the vocational expert's testimony could not constitute substantial evidence that jobs existed in the economy that Plaintiff was capable of performing, because the hypothetical questions posed to the vocational expert by the ALJ did not include a limitation to one-to-two-step tasks.

Under the regulations applicable to Plaintiff's claim, in making a disability determination, the ALJ shall "always consider the medical opinions[5] in [the] case record together with the rest of the relevant evidence" in the record. 20 C.F.R. § 404.1527(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). In weighing medical opinions, the ALJ should consider several factors,

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

14

including the nature and extent of the treating relationship; the degree to which relevant evidence supports the physician's opinion; the consistency between the opinion and the record as a whole; whether the physician is a specialist in the area in which the opinion is based; and other factors which support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6), (d). An ALJ is "not required to include each and every limitation set forth" in a medical opinion, but is "free to consider other relevant evidence." *Cruey v. Berryhill*, No. 4:17-cv-02443, 2019 WL 931920, at *5 (E.D. Mo. Feb. 16, 2019) (citing *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *see also Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (ALJ is not required to accept every opinion given by a consultative examiner because "the interpretation of physicians' findings is a factual matter left to the ALJ's authority."). Because Dr. Weems' opinion was not afforded controlling weight, the ALJ was not required to include in the RFC every limitation she described. *See Hensley*, 829 F.3d at 931-32 (there is no requirement that RFC findings be supported by specific medical opinion). Furthermore, even if it were erroneous to exclude the limitation to one-to-two-step tasks in the RFC, any such error was harmless, as further discussed below, because all of the jobs the ALJ found Plaintiff retained the RFC to perform were limited to no more than one-to-two-steps.

At Step Five of the sequential analysis, the ALJ has the burden to identify specific jobs existing in substantial numbers in the national economy that the Plaintiff can perform despite his identified limitations. See *Brock*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c)(2). 20 C.F.R. § 416.920(g). In making this determination, the ALJ may satisfy his burden by eliciting testimony from a vocational expert based upon hypothetical questions that "set forth impairments supported by substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." *Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010). The vocational expert will then testify about

specific occupations that a claimant can perform in light of his residual functional capacity; in this case, a vocational expert provided such testimony at Plaintiff's hearing. *See* C.F.R. § 416.966(d); (Tr. 49-55).

In his hypothetical to the vocational expert, the ALJ asked if there were jobs in the national economy that a person could perform, if the person was limited to "simple routine tasks that involve working primarily with things rather than other people." (Tr. 52). The vocational expert testified that several jobs existed in the national economy that would accommodate a person with Plaintiff's physical limitations who was also limited to simple routine tasks. *Id.* The vocational expert then went on to specifically state that all the jobs she identified would "require no more than one to two steps. Typically, just one step, but potentially one to two steps." (Tr. 53). In light of the vocational expert's testimony, in which she clearly indicated that her conclusions would not have been different if the ALJ had specifically included a one to two step limitation in his hypothetical, any potential error in the ALJ's failure to include that limitation was harmless, as the vocational expert testified that all the jobs she indicated Plaintiff could perform were limited to no more than two steps. (Tr. 53). Accordingly, the ALJ's reliance on the vocational expert's testimony that Plaintiff could perform the jobs at issue was not in error. *See Bates v. Berryhill*, No. 4:16-cv-JAR, 2017 WL 4358723, at *5 (E.D. Mo. Sept. 29, 2017) (as long as a claimant can perform even one of the jobs identified by the vocational expert, an ALJ's failure to include all limitations was harmless).

V.     **CONCLUSION**

For the reasons set forth above, the Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of September, 2019.